May it please the Court, Dharpana Sheth representing Appellants, I'd like to reserve five minutes for rebuttal. Well, you just need to watch your own time because the clock will continue to run as long as you're arguing, but you may do as you wish. Will do. Thank you, Your Honor. Iowa's Certificate of Need requirement for outpatient surgical facilities violates the Constitution in two distinct ways. First, it denies equal protection by arbitrarily favoring existing outpatient surgical facilities over newcomers. And second, it burdens patients' right to seek medical care. My two physician clients here starkly illustrate the equal protection violation. Dr. Birchansky can expand his business without any real limit, but Dr. Korver cannot. Dr. Birchansky now has a golden ticket that allows him to expand in four ways. First, he can offer new outpatient services, not just eye surgeries. Second, he can expand by adding more operating or procedure rooms. Third, he can sell, or sorry, third, he could build a completely new facility anywhere in his or neighboring counties. And fourth, he can sell that new facility to anyone, even someone like Dr. Korver, who can then offer new services, expand that facility, build a new facility, or sell that facility ad infinitum. What's Birchansky complaining about, then, if he can do all those things? Your Honor, he can only do them now. It took him 20 years to obtain a certificate of need, and only then, after filing this federal lawsuit. Moreover, he would still like to open new centers in other counties, such as the Quad Cities area. The only limit, though... What's the relevance of the last 20 years? He's been applied for a certificate of need five times in the last 20 years, and they are seeking damages against the state or something? No, Your Honor. It just goes to show the burden and expense of a certificate of need process. I understand that, but I just wondered, what is his current injury? He still would like to build a certificate of, sorry, build another facility, and his current con that he has for his current facility is on appeal. Existing facilities have appealed that con grant, and so it could be revoked. And moreover, even if he doesn't have, if for some reason the court found his claims were moot, the case is not moot because Dr. Korver still has standing. But to address your point, Dr. Berchanski's... Well, we look at each plaintiff individually. We look at the standing of each plaintiff individually. I understand about Korver. Right. I just want to understand about... And for Dr. Berchanski, his certificate of need could be revoked. Existing facilities have appealed it, and that appeal is pending in the Intermediate Court of Appeals in Iowa. Do I understand there to be two issues? The first being that it's pending, and so the certificate of need on appeal is not yet final. Right. And the second being that he wants to expand to a non-contiguous county, and that there is no rational basis for that limitation. That's exactly right, Your Honor. And the only other limit is that he cannot spend more than $1.5 million in a single year. Meanwhile, Dr. Korver and others like him cannot spend a single dollar without going through the expensive and burdensome con process. Now, the department... So you think the state should refuse to give certificates to people like Berchanski and limit it to hospitals, and that would be rational? Potentially, Your Honor, if the... Why would that be a better outcome when it reduces the amount of available services? No, Your Honor, I'm not arguing that's a better policy outcome. I am arguing, however, that if the goal here is to protect hospitals from competition, then this particular system of distinguishing between existing outpatient surgical facilities and newcomers, neither of which, by definition, are hospitals, is an irrational way to protect those hospitals. It's, in fact, not just subsidizing hospitals, it's subsidizing hospitals and their competition, which is what makes this system so irrational. Now, the department doesn't really try to defend this unequal treatment. What it does instead is try to characterize it like any other state's con program. But the department cannot escape the record, which shows that Iowa is the only state where existing outpatient surgical facilities can expand while newcomers cannot. And we know this by looking at the record that Iowa works in this peculiar way. First, the department denies con applications on the ground that this potential for unlimited expansion would further harm existing facilities. And we know that existing facilities routinely oppose con applications, specifically citing this potential for unlimited expansion. Second, the record shows just how large this $1.5 million loophole really is. It's an annual limit, which means you could spend $1.5 million the next year and again the following year and again and again. And we know that in Iowa you can build a lot for $1.5 million. If you take the Hiawatha Medical Park, for example, it was built just two years ago, two miles down the street from Dr. Berchansky, and it's a four-story, multi-specialty outpatient surgery center built for under $1.5 million. And we know that if we look at all other states with minimum thresholds under which the con requirement is not triggered, all of those states apply that threshold evenly to existing and newcomer facilities. Iowa is the only state where this $1.5 million loophole applies only to existing facilities. Would it be rational for the state to think that it can allow the additional competition to the extent the current system does, but that it would hurt hospitals if it were opened up completely? No, Your Honor, because there's no limit to how many of these other facilities, these And, in fact, we know that the department doesn't even know how many there are. Under the Exemption O loophole... Well, there's a limit in the sense that there's only a finite number of CON holders, and they have finite resources. And so... Yes, Your Honor, but I think... Just as an empirical matter, there's a limit that's going to be smaller than if there was no CON requirement at all. I think the distinction, though, what makes Iowa so unique is in addition to the $1.5 million loophole, there's an Exemption O that allows for the sale or transfer of existing facilities without a CON. And so, under that loophole, Iowa doesn't... The department in Iowa, nobody actually knows how many outpatient surgical facilities there are. So, it's not clear that it's actually rational to... It's not limiting the number in that respect. Well, why would that be? When you transfer the CON, doesn't that have to be registered someplace? No, Your Honor. There's no... We know that there are existing facilities out there that have never gone through the CON process. For example, the Surgery Center of Cedar Rapids is just one example. Under the Exemption O... Yeah, but it was transferred, right? So, there was a CON someplace, it was transferred to this place, there's still just the one CON, right? No, Your Honor, because under hospitals... Hospitals can offer outpatient surgical services without getting a separate CON for outpatient surgical services. Right, and they don't need that because the idea is to protect the hospitals. And rational speculation under the Kansas City Cab Company's case is sufficient to support that, right? Yes, Your Honor, but I think the key distinction here is that plaintiffs aren't complaining about hospitals versus outpatient surgical facilities. Hospitals are not in the class. Hospitals operate under their own hospital license and are free to offer outpatient surgical services without getting a CON. The distinction we're complaining about, the classification, is between existing outpatient surgical facilities and newcomers, neither of which are hospitals. And we're saying it's completely irrational to allow some of those, that distinction between who can compete, existing facilities versus newcomers, to allow only a group of those to compete with hospitals and not the newcomers. That distinction is what is completely arbitrary and is what is unconstitutional. Well, we still haven't addressed, though, I don't think, or maybe I could ask you again if you think you have. Why isn't it rational to think that if both of those groups were allowed to proceed that it would hurt hospitals? Your Honor, because the distinction... Are you saying that is rational? No, I'm saying that is irrational. That's rational, that is rational, but they can't allow the first group to have CONs? No, Your Honor, what I'm saying is that distinction between the two groups, even if it is somehow limiting competition, is arbitrary, and that's what's irrational. For example, if the department decided that only facilities with single-syllable names would be allowed to compete, but not those with multi-syllable names, that would be irrational. It would be just as arbitrary as the distinction here between existing companies and newcomers. Well, I thought the existing companies had to go through a CON process in order to get the CON in the first place. Initially. Yeah. But not to expand... So it's not like they were given a CON because of the letter their name began with. They were given a CON because in the particular place they were seeking it, the... I'm sorry, Your Honor, I don't think I'm following. I think if you're saying the distinction is between CON holders and non-CON holders, we know that's not the case because there are... I wasn't saying that. You may proceed. Okay, I'm sorry, Your Honor. The key to understanding exactly how Iowa's requirement cannot be justified as rationally furthering any legitimate state interest is seeing that the requirement is basically giving existing outpatient surgical facilities carte blanche to compete with hospitals. And that is not a rational way to protect hospitals from competition. But there's only... It's not just... I thought I read that there's only five. No, Your Honor. Under the record, there are five freestanding outpatient surgical facilities that were granted a CON, but the department in its 30B6 deposition conceded that it has no idea how many outpatient surgical facilities there are in the state. Because if a facility expands and doesn't have to, it creates a new distinct location, a new separate facility, under $1.5 million, it doesn't need to go through the CON process. And similarly, if a facility is sold under Exemption O, it also doesn't need to go through the CON process. And therefore, the number of other satellite facilities, these other distinct facilities, is unknown to the department. And I would submit that if the goal is to limit the proliferation of these existing... Limit the proliferation of outpatient surgical facilities, one would think the department would want to track the total number of them. And we simply don't know. The fact that Dr. Berchanski can now open up a new facility and siphon away all profitable eye surgeries, and not just eye surgeries, he can partner with another E&T positions and siphon away all the profitable outpatient surgeries, shows that this is not working and, moreover, it's completely irrational. Because Dr. Korver, meanwhile, cannot. Now, we can also know that it's irrational because Iowa doesn't even require the outpatient surgical facilities to be affiliated with a hospital to obtain a CON. And conversely, if you wanted to open in an area where there was no hospital in the nearby, you still have to go through the CON process. It's simply not rational to subsidize hospitals by subsidizing their competition. And the CON requirement can also not be justified on the three other grounds asserted by the CON. As the two doctor plaintiffs show, the CON requirement does not limit duplication. It only limits who can duplicate. And the Constitution requires that any classification be rational. There's any number of ways that would be arbitrary in which you'd allow some to compete and not others, but that would conserve bureaucratic resources or help with the orderly development of services. But if it's arbitrary, it is unconstitutional. And that's what the plaintiffs are saying here. The Supreme Court has also required that the classifications must be based on pre-existing differences. You can't create new distinctions, like CON holders or non-CON holders, that are supported only by their own bootstraps. So there's no permissible reason here to favor Dr. Berchanski or other existing outpatient surgical facilities over Dr. Korver and other newcomers. What Iowa's CON requirement does, not just rationally does, but does with mathematical precision, with surgical precision, is protect existing facilities from competition. And that is exactly how the Department defended this program below. And that is what this Court has ruled is unconstitutional, because it is naked economic protectionism untethered to a public good. Well, is that really true? Didn't Dr. Berchanski's own testimony indicate that a hospital would have failed if he hadn't provided outpatient services for him? And that was before he received a CON, and that doesn't explain why now he's allowed to compete in an unlimited fashion with the two local hospitals, but Dr. Korver cannot. And that is the distinction we are challenging. That is what makes Iowa so unique, unlike any other CON program in the country. And it's just not rational to think that we're going to protect hospitals by only allowing some groups, the existing facilities, to compete with them in an unlimited fashion, but not others. So you think if the state said Berchanski cannot get any more, cannot expand, then that would be rational, because then there'd be no distinction between him and Korver? Potentially, but again, it wouldn't have to just apply to Dr. Berchanski, it would have to apply to all of them. I mean, if the state said a non-hospital CON holder may not expand without going through the process again, then those people would be in the same situation as Korver. That's correct, Your Honor, and that may present other problems, but for purposes of this case, that would be a constitutional way, perhaps. That would be a constitutional way, and therefore you favor that over this system, even though this system allows more competition? Because it's not a policy question, Your Honor, it's a question of fundamental fairness under the Constitution. What no other state does is treat these two groups differently, and that's why Iowa's system is unconstitutional. What if Iowa says we think it's better because it allows some more competition without harming our ultimate interest in protecting the hospitals, and so we're willing to tolerate this additional competition by the people who already have CONs? Again, Your Honor, it's not a question then of which is a better policy choice. They can certainly are free to modify or repeal the CON requirement in a way that allows for more competition. No, no. I meant under the current system. Suppose the state says we want to keep the current system because it allows for more competition than the constitutional version that you have. It's unconstitutional because the distinction they're drawing between newcomers and existing facilities is what's unconstitutional. I know that I'm asking in your time, and I'm sorry about that, but I did have one question about the second issue that we never really got to, and I would just, I just am curious as to what is exactly the right that's deeply rooted in the nation's history as regarding the claimed right to particular medical procedures from a particular physician in a particular place? What is, how is that deeply rooted? Your Honor, respectfully, the issue, or the right at issue is the right to seek medical care from approved providers and approved medical treatment. What the district court here did was conflated the scope of the right with whether that right is burdened, and therefore it did not analyze whether any form of heightened scrutiny, including the heightened scrutiny that applied in Atchison, was there. Now, in our opening brief, we discussed at length all the cases, including Cruzan, including the Van Witt case, that support the proposition that there is a right to medical care. Those are very different cases, just factually, but never mind. Well, I would just respectfully submit that there's no principled reason why Plaintiff Jensen's right to seek a corneal replacement so he doesn't go blind should be accorded less protection than the right to terminate a pregnancy. And to hold otherwise would somehow elevate the abortion providers and give them special constitutional status. But that's a right that's already been announced and enunciated and reinforced numerous times by both the Supreme Court of the United States and the lower courts, as opposed to whatever this right. Well, no, Your Honor, with all of those, that entire line of jurisprudence is rooted in the notion of bodily integrity. And as the Supreme Court recognized in Cruzan, this notion of bodily integrity, the right to make your own medical decisions, is fundamentally rooted. What has been limited, it doesn't extend to the rights of minors to make those decisions. There are caveats. It doesn't extend to those who are incompetent. And it doesn't extend to unapproved treatments. And it doesn't extend to unapproved providers. But here, there is no distinction or no dispute that the providers here are completely licensed and approved, the treatments are approved, and it's not a controversial procedure like in the abortion context. I'll reserve the rest of my time. You may. Very well. Thank you for your argument. Ms. Esbrook, we'll hear from you. May it please the Court, Jordan Esbrook for the Department of Public Health, Director. Yes, Your Honor. You may raise that lectern since you're tall or there's a button on the right side. We'll hear you better if the microphone matches your height. Thank you. There we go. This case is on appeal from the district court's grant of summary judgment for the state. The state of Iowa has chosen to regulate hospitals and surgery centers by requiring new entrants to obtain a type of license called a Certificate of Need, but allowing existing hospitals to expand by up to $1.5 million in improvements under their existing Certificate of Need. Verchansky argues that treating those with a Certificate of Need differently than those without is a violation of equal protection and due process under the United States Constitution. It is undisputed in this case that the test that applies to economic regulation like this one is the rational basis test. As articulated by this Court and the United States Supreme Court, the rational basis test is very deferential to the judgments of the legislature. Rational basis review requires only a rational relationship between the disparity in treatment, between the lines that were drawn by the legislature, and a legitimate governmental purpose. The state of Iowa has articulated many legitimate governmental purposes that support the CON program. The one that the district court found most persuasive was protecting full service community hospitals in Iowa from competition that would cherry pick away the profitable procedures and leave them with charity care and unprofitable care for the needy in their communities. The district court found this was a legitimate governmental interest, and that the lines that the government had drawn in the CON program had a rational relationship to it. In the record, at 764 and 765, the state provided eight rational governmental interests in total, and under the rational basis test, the court is free to come up with other legitimate governmental purposes. Do you want to address the specific alleged irrationality that counsel raised today, which is between the non-hospital CON holders and the new applicants? Yes, your honor. I think this comes down to that the line drawing doesn't have to be perfect. I think it's clear in the record that the CON program, even in these particular instances that the plaintiffs have brought forward, does protect hospitals from some competition. Dr. Bertansky admitted that doing procedures in these hospitals kept them afloat in some cases. They're very small community hospitals. But it doesn't protect them of it. Sorry. Go ahead. That was before he had the certificate, as I understand. That's correct. That's correct. It doesn't protect them from all competition because, as your honors have noted, the law does not prohibit surgery centers. They do exist. Ms. Schaaf is correct that there are surgery centers, I believe, that started being linked to a hospital and then later on became an independent entity, for instance. And so we're not financially supporting that hospital anymore. So the line drawing is not perfect. And the state submits that it does not have to be under the rational basis test. It does protect from some competition, but perhaps not all. Does the state have a mechanism to know how many outpatient surgery centers there actually are? I think it does, your honor. I think what Ms. Schaaf was referring to was a statement made in the 30B6 deposition from the witness on behalf of the Department of Public Health. And I know that under 30B6 depositions, the party is held to the answers that that party gave. It seems likely to me that this was a question that could have been answered another way. I don't know offhand how many there are. I think the department probably does know and that the witness at that moment did not know. But regardless of how many there are, is this correct that they would all be associated with the five non-hospital CON holders? Every surgery center has to be associated with a CON in some way, your honor. And so the limits are there. Again, they may not be perfect, but Dr. Berchansky is still limited with the con that he has. He can expand up to $1.5 million, which is a pretty significant limit given the expense of starting hospitals and building costs. He does not have the ability to expand and compete with hospitals unlimited all over the state. And he's limited in his locality. He's limited to a locality? I believe so, your honor, under the CON that he has. Yeah, and doesn't the CON provide that it has to be in the county where the facility is established in any contiguous county? I believe so, your honor, that's correct. Counsel mentioned a particular outpatient surgery center that sounded like it was fairly extensive that was constructed for under $1.5 million. Is that? Hiawatha. Was that in the record? I believe that is in the record, your honor. Okay. And if that's the case, if it's not a significant limitation, the dollar amount, if it's not a limitation anymore, is that problematic? I think it is still a limitation, but I don't think it would be problematic if, again, the line drawing wasn't perfect and under the economic conditions you could do a lot with $1.5 million. That's something you can take to the legislature and say either the hospitals could come and say, you need to change this limit. It's too big. We're having too much competition. We are facing financial difficulties and we'll be unable to provide this care for diabetes and for cancer and for long-term care that are not profitable and are absolutely necessary. On the other hand, CON holders for surgery centers could come in and say, it's not high enough. We're not able to expand the way we want to to provide the services we want to provide. The point is that the proper avenue for this type of discussion is the Iowa legislature where they can make all kinds of arguments about what should be done with the statute. Would this be a correct understanding of your position that it would have been rational for the legislature to restrict CONs to hospitals, perhaps? That would be rational if the goal is to protect hospitals and protect communities to make sure they have hospital services. Instead of doing that, the legislature drew a line and said, there will be some competition that's permitted through the CON program. Hence, we have five non-hospital CONs. That line drawing is a choice that the legislature made and it's rational. Yes, your honor. That is an accurate statement of the state's position. It seems a little bit like no good deed goes unpunished. They've allowed for some competition, some alternatives. I think it is rational under the test for them to have done that. Is there any kind of screening that's part of the CON process that would justify saying that Bershansky is more suitable to expand than Korver? Yes, your honor. The Health Facilities Council that hears these cases, they're actually pretty extensive litigation about the needs in the community and what kind of services are offered and how stable the hospitals are. Again, there's an appeal process for that, Dr. Bershansky. That all goes, as I understand it, that all goes to just the need in the community at the original location for which the application is made. The plaintiffs here apparently are complaining that now Bershansky can go to the next county over and open a place, whereas Korver can't show up there and open a place, even though neither one is affiliated with a hospital. I'm just wondering if the CON process somehow also measures suitability of the provider so that the state is thinking, well, we've screened these people and so we know they're quality providers or something, or is that not part of the CON process? It's strictly a need analysis? You know what? I'm actually not sure the answer to that question. I think even if it were the case that all they needed to know was the doctor is licensed and they were only looking at, we already have someone here who does that, we don't need anybody else, that would still be rational. But I think as the state put forward in its list of potential purposes for the statute, the ability to put an application together and show compliance with a really complex network of laws and regulations, not just medical licensure, but if you have a surgery center you have to comply with, there's a variety of accrediting agencies that accredit surgical centers and you have to show that you've complied with one of them. Interestingly, the state of Iowa has not chosen to regulate surgical centers the same way they regulate hospitals. I think citizens of Iowa assume when they go to a surgical center that they will be safe and they will be cared for. This is one way the state has chosen to do that, to send people through this process. Again, it doesn't have to be the way that I would choose to do it. It doesn't have to be the way that Dr. Perchanski would choose to have this process set up, but the legislature has done this in a rational way that is related to their stated purpose of protecting the health and safety of Iowans. I think the test, the rational basis test, is really the heart of this case and the parties are arguing for different tests to be applied. Non-suspect classifications are given a strong presumption of validity and only completely arbitrary legislative acts are inconsistent with the 14th Amendment. As the Supreme Court said in FCC v. Beach, a statutory classification that does not infringe on a fundamental right or involve a suspect class must be upheld if there is any reasonably conceivable set of facts that could provide a rational basis for the classification. That's because rational basis is a paradigm of judicial restraint. I think what the parties disagree on is whether there should be any kind of a fit test of how closely does the legislative scheme achieve the goals that the state says it wants to achieve. I think this court made clear in Neon that that is not the kind of test that applies here. The plaintiff hair braiders argued there was so little overlap between the cosmetology education they would be required to get to become licensed cosmetologists and African-style hair braiding that the lines drawn by the legislature were irrational. And this court found that it's enough that the state can identify an evil and find a rational way to address it. It's not going to kind of go beneath the surface, look under the hood, how well does this work in fact, that doesn't give the legislature proper deference. And so I think this is important because a great deal of Dr. Bertchansky's argument is that the CON program isn't a good fit or the best way to achieve the goal of protecting full service hospitals. In their view, the doctor is harmed, the consumers are harmed because they can't have the surgery they want where they want it, or else it does protect hospitals, but not enough. Dr. Bertchansky wants this court to apply a fit test and determine that the CON statute is too imperfect to pass constitutional muster. But the state is free to regulate some problems and not others and tackle issues piecemeal and the regulation need not be perfect. And even though the state actually doesn't bear any burden of proof here, the record contains a lot of information about the ongoing debate in public policy circles about whether a certificate of need program should continue. I think the fact that it's arguable and it still exists in 34 states supports the fact that the state of Iowa has a rational reason for continuing the program. There's also the testimony from Dr. Bertchansky and some studies that show there's some evidence that it keeps costs down, which was one of the original purposes for the law. There are no cases in this circuit supporting a fit test or a more searching inquiry. Can you go back to the cost rationale? I thought once fee for service was superseded as the compensation method, that cost was no longer really a valid basis. What's the remaining cost advantage? I think it's linked to the fact that the hospitals, they still need to fill the beds that they have. Their overhead remains the same. And if they have empty beds, perhaps they will experience financial harm or perhaps they'll have to charge more for the beds that they have. There's a lot of different factors that go into how much medical care costs, and obviously it does continue to increase. I don't think this method is perfect or has solved the issue. And you are correct, Your Honor, that when Medicare and Medicaid changed how they paid for things, that's when the federal government stepped back and said, we're not going to require this anymore. Because the federal government, that's the only way they were paying for health care. But other people are still paying for it in lots of different ways, and I think it's conceivable that making sure that hospitals have their beds filled could have some relationship to keeping costs down. But you're not talking about costs solely confined to the outpatient surgery. Right, Your Honor. I'm talking about medical costs in the whole health care system. Because I think, as I've read it, the record shows that the outpatient surgery at the hospitals is more expensive, typically, than with some of these other outpatient centers, right? I think that's true. That's the evidence that the plaintiffs have introduced. And they are arguing that the patients of Dr. Korver and Dr. Berchanski will pay less, sometimes significantly less, if they are opening their own surgery centers than they do in a full-service hospital. So I think some consumers, like those ones, may have some hardship under the statute. The legislature is considering all the people of Iowa, including the people who don't need cataract surgery but need to go into the hospital for any number of other reasons, which are less profitable for the hospitals in the end. Is the legislature's concerns greater for keeping alive those rural community hospitals? And if so, is that a real concern? As I read the record, it seemed like most of these surgical centers are located in urban areas where you really aren't looking at a hospital that's going to have pulled away from it all of its profit centers and then left with just welfare care, and they're going to shut their doors. I mean, growing up in a rural area, I understand you look at the hospital with two docks, and they need every bed filled. And the legislature is always concerned about that particular hospital, because if it's not there, people have to go 150 miles to have a baby. But is that rationally connected to this particular system that's in place, the CON? Yeah. I think the legislature could have thought that it was, in that people travel. And so I live in a small town in Iowa also, and we have a small community hospital. But people drive to Des Moines, they drive to Cedar Rapids, and if they wanted to see a particular provider, if they thought it was cheaper there, if they thought they liked going to a... I mean, there's some evidence in the record that people like going to a smaller surgery center. It feels more comfortable. It feels smaller. Maybe they feel like they're getting more specialized care. People might drive for that. And I think a rational legislature could believe that it would pull profitable surgeries away from small hospitals, like the one in my community. Is it the emergency rooms that are the big, in this day and time, the big cost center? Emergency rooms are... Because so many people, low income, uninsured people go there for their primary care? Yes, Your Honor. I think that's definitely part of it, that the emergency rooms have to be open. They have to see everybody who comes in the door. I think there's a lot of other different kinds of procedures that people would want to have available in a local hospital and not have to travel a long way for. Erickson mentioned having a baby. There are communities that don't have that option anymore, and the legislature could rationally be concerned about that. Influenza, for example, going into the hospital for several days, especially if you are medically fragile in some way or elderly. Those are services that may not make the hospitals a lot of money, and they are not kind of an in and out thing like the cataract surgery might be, but they're something that the legislature could rationally believe really needs to be available in a local community. I think before I am done, I want to speak a little bit about the second claim that we haven't had a chance to talk about, which is whether there's a fundamental right at issue here that would require this court to impose a more strict standard of scrutiny in this case. I don't think there's any support in any of the cases that the plaintiff has offered that would support imposing a stricter standard of scrutiny. There are fundamental rights that the Supreme Court has recognized, including the right to marry, to have children, to the direct education and upbringing of one's children, and to marital privacy, the use of contraception, and indeed bodily integrity, such as the right to refuse medical care. The cases have gone that far. I don't think there's any support in the cases for the idea that a person has a right to seek medical care from a specific provider at a specific location. There's nothing in the record showing that Dr. Korver is not able to provide the surgeries that he does, that his patients can't seek him out. The injury is that, as alleged in the record and the state is willing to concede, those patients may have to pay more to have that surgery. I don't think there's a fundamental right to have health care from a particular provider at a particular location or for a particular price. The state's position is that only a rational basis should apply here and that there's no support for plaintiffs' kind of novel claim in that regard. Before I step down, I would just like to say that, in conclusion, the legislature is the perfect place for all the debates that we're having today. The legislature has the right to draw lines rationally related to protecting public health, and the 2020 Iowa legislative session actually started the day before yesterday. The plaintiffs are free to bring any arguments they want to that kind of messy, imperfect process. I understand the hair braiders from the Nguyen case were successful in the Missouri legislature after their case was unsuccessful here. Thank you for your time this morning. Thank you for your argument. Ms. Schaff will hear from you in rebuttal. Yes, Your Honor, a few quick points in rebuttal to address your question, Judge Colleton. It's not that the cons are getting transfers. It's the facilities that get transferred. Some con holders could spin off at the facilities. They would maintain their original con, but the people who bought the facility have never gone through the con process. It's not the con that has transferred, it's facilities. The con process doesn't ensure that a facility has ever had a con before because the facility could be a spin off. This is not just a hypothetical situation. We know that this has happened, for example, with the Mississippi Valley Surgery Center. To address the point about the number of outpatient surgical facilities, it's not that the witness didn't just simply know the number. The witness conceded the department has no way of tracking because of these exemptions. Because of the $1.5 million loophole, because of the exemption for consensual sales, they don't go through the con process, so the department has no way of knowing. We do know that there are a number of these facilities out there because of existing facilities who oppose con applications will point to those facilities to say that this need is already being met. I just have one question. There's been comments about five con holders. That was five in a single that were recently approved rather than five in total? Yes, Your Honor. That was five, exactly. It's five since the year 2000 that were granted. Again, those are just the five that went through the con process. It doesn't tell us how many that went outside of the con process because of these peculiar Iowa loopholes. If there was a transfer of a facility, would that person then have to have a CON that's been transferred to it? No, Your Honor. That's what makes this so crazy. Well, how is it transferred? Just the facility itself is transferred. There is no con that is transferred. You mean originally there was a CON for the facility? There could have been. It doesn't have to be. For example, a spin-off of a spin-off, the original spin-off satellite facility would not have ... What do you mean by spin-off? You mean a 1.5? A 1.5 scale. Yes. If Dr. Berchanski sold his facility, built a new facility, sold that facility to Dr. Korver, Dr. Korver, who doesn't have a CON, then sold that facility to someone else, there is no con process there. You could trace it back to a CON. Potentially, but there's nothing to link Dr. Korver or his potential buyer to the original con holder. That's what makes Iowa's system so irrational. Would there still be a finite limit? No, Your Honor. I don't see how there is a finite limit when you can keep doing that at a fixed rate. That's what I'm asking. Right. Is it possible for you to just keep adding another one until Korver could sell one, move to another facility? Yes, Your Honor. Then you can hop across the state because the only limit seems to be contiguous counties. If you look at a map of Iowa, for example, Fayette County, there's eight contiguous counties there and nothing to prevent you from then hopping over to the next facility, and the next county, and the next contiguous county after that. Regarding the $1.5 million ... Wouldn't you have to concede that the program as it exists limits, to some extent, competition with community hospitals? No, Your Honor, but even if it does, what makes this program unconstitutional is that arbitrary distinction between newcomers. If they want to limit competition with hospitals, they certainly are free to apply that $1.5 million loophole evenly. It's because they don't. It's because they're drawing this distinction between existing facilities and newcomers that makes it irrational and unconstitutional because this court, the Supreme Court, and other circuits have recognized protecting existing facilities from competition is not a legitimate interest. It is favoring A over B without any public good. Regarding the $1.5 million threshold, it's not that it's just the amount of the limit. It's the fact that it's applied unevenly and we know from the record it's not just Hiawatha, for example. It's Ankeny facility. Even Dr. Berchanski's original facility was built for $1.2 million but didn't have to go through the con process because he had originally partnered with St. Luke's. And finally, Your Honors, I point you to the evidence of consumer harm that the district court completely ignored. This program is causing real harm to real patients and we've shown not just the additional cost but the fact that patients have to drive over an hour to get to the nearest outpatient surgical facility, that they're being denied current safer procedures like laser-assisted cataract surgery, that they're paying a lot more for removal of skin cancer cells, and this is why under both the Equal Protection Clause and Substantive Due Process that this program should be struck down. We're sorry. Thank you. Thank you for your argument. The case is submitted and the court will file an opinion in due course. Thank you to all counsel. You are excused.